**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

KENNETH G. LEWIS,

    Plaintiff,                                      Case No.: 6:21-cv-728

vs.

UNION HOME MORTGAGE CORP.,

    Defendant.
_____/

## **COMPLAINT**

    Plaintiff, KENNETH G. LEWIS (hereinafter "Mr. Lewis"), by and through the undersigned counsel, sues Defendant, UNION HOME MORTGAGE CORP. (hereinafter "UNION"), and as grounds therefore states as follows:

### **JURISDICTION, VENUE AND PARTIES**

1. This is an action for damages brought against UNION under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") and the Florida Civil Rights Act Section 760.01 *et seq.* ("FCRA"). This Court has original, concurrent and subject matter jurisdiction pursuant to article III, section 1 of the U.S. Constitution, 28 U.S.C. sections 1331, 1332 and 1343 and Florida Constitution.

2. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

3. Venue is proper in U.S. District Court, Orlando Division, Orlando, Florida because all actions material to the complaint have occurred in Orange County, Florida.

4. Mr. Lewis is a resident of Orange County, Florida.

5. UNION is a Florida corporation who is doing business in Orange County, Florida. UNION is authorized to do business in the State of Florida and is doing business in the State of Florida. The employment practices complained herein all occurred in Orange County, Florida.

## STATUTORY PREREQUISITES

6. On February 10, 2020, Mr. Lewis timely filed a Charge of Discrimination ("COD") with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission of Human Relations ("FCHR") against UNION. On or around January 25, 2021, the EEOC issued Mr. Lewis a Notice of Right to Sue upon request, a copy of which is attached hereto as *Exhibit "A".* Mr. Lewis received the EEOC's Notice of Right to Sue on or around February 22, 2021.

7. Mr. Lewis has exhausted all administrative remedies, and all conditions precedent to the institution of this action have occurred or have been waived.

## GENERAL ALLEGATIONS

8. Mr. Lewis was a licensed mortgage loan originator with 20 years of experience in residential lending.

9. In December 2016, Mr. Lewis suffered an ischemic stroke that left him partially disabled. Because of his disability, Mr. Lewis was forced out of the workforce for more than two (2) years.

10. After more than two (2) years in recovery and rehabilitation, Mr. Lewis was physically able to re-enter the workforce.

11. In January of 2020, Mr. Lewis was recruited to work as a full time mortgage loan originator with UNION. Mr. Lewis was qualified to do the work set forth in the position.

12. In December 2019, Damon Van Dyke ("Mr. Van Dyke") advised Mr. Lewis that he was joining UNION as a branch manager, and wanted Mr. Lewis to be part of his team. He requested an updated resume to present to UNION Area Sales Manager for Orlando, Deana La Rosa.

13. Mr. Lewis emailed him the updated resume on December 21, 2019. The updated resume included a recent mortgage company employer and a reference to his medical disability to explain the gap in employment.

14. On January 6, 2020, Deana La Rosa contacted Mr. Lewis and they met at her office in Celebration, FL.

15. All went well with the interview. They talked for over an hour and discussed Mr. Lewis' work history, how his injury occurred, along with UNION's training, tools and commission structure.

16. Wrapping up the interview, Deana advised Mr. Lewis that she would be forwarding his information to corporate to get the process started. She advised they would be emailing him a link to take their Personality Profile Assessment test. This test is for coaching purposes and to gauge a sales representative's strengths and weaknesses.

17. The next day, on January 7, 2020, Mr. Lewis received the assessment test email from Christian Kearns (Senior Financial Analyst) with UNION's corporate offices in Ohio. Mr. Lewis completed and submitted the test that same day.

18. On January 8, 2020 Mr. Lewis received an email from Christian Kearns with a copy of the assessment results and thanking him for taking the time to complete the assessment. The email also stated that the information would be valuable in helping the company "coach"

him to the next level of his career. Copied on that email was Deana La Rosa and two other individuals, Eddie Scott and Bryan Wright. As per the UNION's website, Eddie Scott is the Regional Manager for the Orlando area and Bryan Wright (based in Fayetteville, NC) is the Vice President of Retail Sales. This was the last communication Mr. Lewis received from UNION.

19. On January 16, 2020, Mr. Lewis contacted Deana La Rosa to inform her that Mr. Lewis had not heard from anyone since January 8, 2020. She advised him that Eddie Scott should have contacted him, and she would reach out to him again to set up a call or meeting.

20. Over the next 11 days, there was no contact from Eddie Scott or from anyone else at UNION.

21. On January 27, 2020, Mr. Lewis reached out to Deana again and advised her that Eddie still had not contacted him. Deana texted him back that she would follow up. Since that text on January 27, 2020, Mr. Lewis has not heard from either Eddie or Deana.

22. On February 5, 2020, Mr. Lewis decided to make one last attempt to get a response by replying to Christian Kearns' January 8, 2020 email, thanking him for taking the assessment test. Mr. Lewis replied to and addressed all parties copied on the original email, stating that Mr. Lewis had not heard from anyone since receiving Christian's "Thank You!" email. Mr. Lewis also stated that he was still interested in working with UNION and would appreciate it if someone would contact him. Deana La Rosa, Christian Kearns, Bryan Wright, and Eddie Scott were all on that email; yet, his email was ignored.

23. Later that day, Mr. Lewis spoke with Mr. Van Dyke to see if he could let Mr. Lewis know what was going on and provide him with a status update. Mr. Van Dyke had just returned from his onboarding at UNION Corp in Ohio and stated that Mr. Lewis should have

received his official offer letter by now. Mr. Lewis filled him in on the preceding details, at which point he stated he would reach out to Deana.

24. Shortly after, Damon contacted Mr. Lewis advising that Eddie Scott took Mr. Lewis out of hiring consideration with UNION because Mr. Lewis didn't have "any production for almost 3 years" to show him. Notwithstanding, Mr. Scott ignored (a) the fact that Mr. Lewis had re-entered the workforce as a mortgage loan originator 8 months prior to Mr. Van Dyke recruiting him, and (b) at the timeframe Mr. Lewis was out of the industry he was recovering from a stroke.

25. Mr. Lewis was singled out, discriminated against, marginalized and denied employment with UNION because of his disability.

26. UNION's actions in terminating Mr. Lewis' employment application during the final process under the above-referenced pretext effectively eliminates employment opportunities for people with disabilities from consideration although there are reasonable accommodations for their disability which could have also been afforded to Mr. Lewis.

## COUNT 1
### Violation of the American With Disabilities Act

27. Mr. Lewis, reasserts and reaffirms the allegations set forth in paragraphs 1 – 26 above and further states that this is an action against UNION for violation of the American with Disabilities Act.

28. Mr. Lewis is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that he has a disability, UNION perceives him to have a disability and he had the requisite education, state and national licensures, certifications and requirements to perform and could have performed the essential functions of a mortgage loan originator when he was recruited.

29. UNION is an "employer" within the meaning of 42 U.S.C. §§ 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years.

30. Thus, it is also a covered entity within the meaning of 42 U.S.C. § 12111(5).

31. Mr. Lewis was denied employment at UNION due to his disability.

32. Mr. Lewis was qualified for the position (*i.e.*, mortgage loan originator) in all aspects, except for the fact of the discrimination against him due to his disability.

33. Due to Mr. Lewis's actual or perceived disability, UNION denied Mr. Lewis employment.

34. Specifically, UNION's discriminatory actions included not making reasonable accommodations for the known physical limitations of Mr. Lewis, despite the fact that doing so would not impose an undue hardship on the operation of UNION's business within the meaning of § 12112(b)(5)(A).

35. Mr. Lewis has been damaged by UNION's violation of the ADA inasmuch as Mr. Lewis was unable to use his education and training as a mortgage loan originator, and has suffered emotional distress, and mental pain and anguish.

36. Mr. Lewis is entitled to his attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

37. Mr. Lewis is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

**WHEREFORE**, Mr. Lewis respectfully requests that this Court award him such damages as he has sustained and as shall appear proper within the provisions of the ADA including, but

not limited to, economic and non-economic compensatory damages, punitive damages, attorney's fees, costs, prejudgment interest, a trial by jury on all issues so triable and all other relief that this Court may deem just and proper.

## COUNT 2
### FCRA Handicap | Disability Discrimination

38. Mr. Lewis, reasserts and reaffirms the allegations set forth in paragraphs 1 – 26 above and further states that this is an action against UNION for violation of the Florida Civil Rights Act, *Fla. Stat. §§* 760.01 et seq.

39. The Florida Civil Rights Act provides that it is an unlawful employment practice for an employer:

> (a)  To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.
> (b)  To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

*Id*. at *Fla. Stat. §* 760.101) (a)-(b).

40. At all times relevant to this action, as an individual who had a disability or handicap, Mr. Lewis was an aggrieved person within the meaning of *Fla. Stat. §* 760.02(10).

41. At all times relevant to this action, Mr. Lewis was an individual covered by FCRA pursuant to *Fla. Stat. §* 760.10(1)(a) in that he suffered from a disability or handicap.

42. UNION, at all times relevant to this action, had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

43. UNION was, at all times relevant to this action, an employer within the meaning

of *Fla. Stat. § 760.02(7)*.

44. UNION discriminated against Mr. Lewis because of his disability, in violation of *Fla. Stat. § 760.10(1)(a)*.

45. The specific acts of discrimination attributable to UNION include (i) the failure to provide Mr. Lewis with a reasonable accommodation for his disability or excusing the timeframe where Mr. Lewis was out of the workforce recovering from the ischemic stroke, and (ii) denying employment because of his disability or UNION's perception that Mr. Lewis had a disability.

46. Mr. Lewis's disability was a motivating factor in UNION's decision to deny employment, in violation of *Fla. Stat. § 760.10(1)(a)*.

47. UNION's violations of *Fla. Stat. § 760.10(1)(a)* were intentional and were done with malice and reckless disregard for Mr. Lewis's rights as guaranteed under the laws of the State of Florida by intentionally discriminating against Mr. Lewis because of his disability or because it perceived Mr. Lewis had a disability. As such, Mr. Lewis is entitled to punitive damages against UNION pursuant to *Fla. Stat § 760.11(5)*.

48. Pursuant to *Fla. Stat. § 760.11(5)*, Mr. Lewis is entitled to recover all attorney's fees from UNION as the prevailing party in this action.

**WHEREFORE**, Mr. Lewis respectfully requests that this Court award him such damages as he has sustained and as shall appear proper within the provisions of the FCRA including, but not limited to, economic and non-economic compensatory damages, punitive damages, attorney's fees, costs, prejudgment interest, a trial by jury on all issues so triable and all other relief that this Court may deem just and proper.

                                           **/s/ Jesus Irizarry**
                                           JESUS IRIZARRY, ESQUIRE

**IRIZARRY MENDEZ PL**
Florida Bar No.: 103542
P.O. Box 771713
Orlando, FL 32877
Tel. (321) 300-4529
Fax (888) 901-4529
E-Mail: jim@IrizarryMendez.com
Counsel for Mr. Lewis